**Joseph Earl RODGERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–86–0370–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 12, 1987.

Robert Morrow, Hocker, Rodriguez & Morrow, Janet Morrow, Morrow & Burnett, Houston, for appellant.

John B. Holmes, Jr., Harris Co. Dist. Atty., Frances M. Northcutt, Danise Crawford, Harris Co. Asst. Dist. Attys., Houston, for appellee.

Before JACK SMITH, DUGGAN and COHEN, JJ.

## OPINION

JACK SMITH, Justice.

The sole issue in this case is whether the appellant's constitutional right to equal protection under the law has been violated. A jury found the appellant, a black person, guilty of unauthorized use of a motor vehicle. The court found the enhancement allegation to be true and assessed punishment of five years confinement. Appellant alleges that the State purposely excluded all members of his race on the basis of race alone by use of its statutory strikes.

On May 15, 1986, the voir dire examination of a venire of 40 persons was conducted. Since no members of the jury panel were excused for cause, the jury was selected, after the exercise of peremptory strikes, from the first 32 members of the venire. Six of the 32 members were black. The State exercised all ten of its peremptory challenges by striking six black and four white persons, while the defense counsel exercised his peremptory challenges by striking ten white persons.

After the peremptory challenges were exercised, the defense attorney appears to have made an off the record objection to the racial composition of the jury. The trial judge then conducted recorded proceedings in chambers, during which the prosecutor, who was also black, was asked to state her reasons for striking the six blacks from the panel. After the court heard the prosecutor's reasons for each of her strikes and the appellant's contention that the State's strikes were based on race, it concluded that the defense attorney had not made a prima facie case of unfairness and that the prosecutor's reasons for her peremptory strikes were sufficient.

Appellant's sole point of error asserts that he was denied equal protection of the law when the State purposely excluded members of his race from the jury by means of peremptory challenge. Appellee responds that appellant failed to carry his burden of proving a prima facie case of intentional discrimination, and that even if he had satisfied his burden, the trial court

correctly found that the appellant failed to carry his burden of showing that the prosecutor's strikes were made with invidious intent.

■ To establish a prima facie case of purposeful discrimination in the selection of jurors, the defendant must initially show that he is a member of a racial group capable of being singled out for different treatment and that the prosecutor has exercised the peremptory challenges to remove from the venire members of the defendant's race. Secondly, the defendant is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. Finally, the defendant must show that these facts and other relevant circumstances raise an inference that the prosecutor used that practice to exclude members of the venire on account of their race. In deciding whether the defendant made the requisite showing, the trial court should consider all relevant circumstances. *Batson v. Kentucky,* — U.S. ——, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986).

■ Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for using its peremptory strikes on persons of the defendant's race. The prosecutor's explanation need not rise to the level of justifying the exercise of a challenge for cause. However, the prosecutor may not rebut the defendant's prima facie case of discrimination by merely stating that he challenged jurors of the defendant's race on the assumption, or his intuitive judgment, that they would be partial to the defendant's race; nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or affirming his good faith in individual selections. The prosecutor must articulate a neutral explanation related to the particular case to be tried. *Id.,* 106 S.Ct. at 1723–1724.

The record shows that the appellant objected to the composition of the jury after the State's peremptory challenges but before the jury was sworn in. This is the proper time to raise such an objection. *Williams v. State,* 712 S.W.2d 835, 840 (Tex.App.—Corpus Christi 1986, no pet.). The State concedes in its brief that the record establishes that the first and second requirements set forth in *Batson* for a prima facie case were met, however, it challenges appellant's contention that he also satisfied the third *Batson* requirement, i.e., that the facts and any other circumstances raise an inference that the prosecutor used that practice to exclude members of the venire from the jury on account of their race. *Batson,* 106 S.Ct. at 1719.

■ Although *Batson* requires a showing that members of appellant's race were removed from the jury, it does not speak to how many members of appellant's race must be struck. *Williams,* 712 S.W.2d at 841. There is no quantitative formula with which to gauge peremptory challenges. Such determinations should be based on all relevant circumstances in a particular case. The court in *Batson* gave trial judges wide discretion to make these determinations, but requires that they undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available. *Batson,* 106 S.Ct. at 719. It discussed several factors that should be considered when making this determination, such as whether there is a pattern of strikes against black jurors. A trial court can also consider the prosecutor's questions and statements during voir dire examination and in exercising his challenges. *Id.*

In *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499 (1979), the court said:

We begin with the presumption of proper use of peremptory challenges. That presumption is rebuttable, however, by either party showing that (1) a pattern of conduct has developed whereby several prospective jurors who had been challenged peremptorily are members of a discrete group, and (2) there is a likelihood they are being excluded from the jury solely by reason of their group membership.

*Id.*, 387 N.E.2d at 517. The court in *Soares* held that the pattern of conduct was clearly demonstrated, when the prosecutor challenged 12 of 13 eligible blacks. The second element was also shown based on the disproportionate exclusion by the prosecutor of 92 percent of the prospective blacks compared to only 34 percent of the white panel members. The court in *Soares* noted that 100 percent of minority jurors need not be challenged to establish racial discrimination.

The prosecution in *People v. Wheeler*, 22 Cal.3d 258, 583 P.2d 748, 148 Cal.Rptr. 890 (1978), struck all the blacks on the panel, which resulted in an all white jury. In *Wheeler*, the defendant, a black man, was charged with the murder of a white man. The court held that the defendant had established a prima facie case, which showed a strong likelihood that the State had removed jurors solely on the ground of group bias. The court also delineated several factors to be considered: (1) whether the State struck all or most of the group members or used a disproportionate number of its strikes against group members; (2) whether the struck jurors shared only one characteristic—their membership in the group—and that in all other respects they are as heterogenous as the community when considered as a whole; (3) whether the prosecutor had engaged the struck jurors in more than desultory voir dire or had even questioned them at all; and (4) whether the crime involved was interracial. *Id.* at 281–282, 583 P.2d at 764, 148 Cal.Rptr. at 905.

In *Williams v. State*, the prosecutor struck two whites, two of three blacks, and six people with Spanish surnames. The crime involved was sexual assault in which both the victim and the defendant were black. The racial composition of the jury fairly represented the general population of the county, although the court noted that there was no requirement that juries reflect the community population in any exact proportion. Taking into account all the relevant circumstances, the court held that the appellant did not make a sufficient showing that the State exercised its peremptory strikes improperly or solely on the basis of race. *Williams*, 712 S.W.2d at 842.

■ Unlike *Williams*, in the present case the prosecutor struck all six black members of the venire, and four white members. The appellant did not allege that the crime was interracial, nor does the record reveal whether all of the prosecutor's witnesses were white. The record reveals that the prosecutor questioned only three of the six black members. Based on all the facts and circumstances, we hold that the appellant made a prima facie showing of purposeful discrimination.

■ Since the appellant made his prima facie showing, the burden shifted to the State to come forward with a neutral explanation for the striking of all the persons of appellant's race. The trial court determined that the prosecution's peremptory challenges were not motivated by intentional discrimination; therefore, this Court may only reverse if that determination is clearly erroneous. *United States v. Mathews*, 803 F.2d 325 (7th Cir.1986).

■ The prosecutor made the following explanations for her strikes:

(1) She struck Mr. Jordan because he worked for the Houston Police Department as an engineer, and she felt that a civilian employee of the police department serving on the jury would not take a Houston police officer's testimony as seriously as a private citizen.

(2) Mr. Young was struck because the prosecutor felt that he distrusted her and that something seemed unfavorable.

(3) She struck Mr. Smith because he did not respond to her question of whether he had been involved in a criminal case as a witness or as an accused, and she felt there was an inconsistency between Mr. Smith's oral response and his response on the jury form.

(4) Ms. Greene was struck for failing to complete the jury form; specifically, she did not respond to the question of whether she was a party to a lawsuit. There were two or three other people who also failed to complete the form, but the

record does not indicate whether they were white or black.

(5) Mr. Ware was struck because he had a relative who was involved in a contemporaneous criminal proceeding.

(6) Mr. Crosby was struck because he did not seem satisfied with the prosecutor's explanation of why, in an unauthorized use of an automobile case the State did not have to prove that the appellant stole the car. Mr. Crosby also failed to answer the form regarding whether he had been an accused, complainant, or witness in a criminal case. The prosecutor felt that Mr. Crosby seemed to distrust her.

In *Branch v. State*, No. 6 Div. 93 (Ala. Nov. 12, 1986) (WESTLAW, Alabama cases), the Alabama Court of Criminal Appeals held that the prosecutor's explanations for his strikes were neutral, clear, reasonably specific, legitimate, and related to the outcome of the case. The prosecutor stated that he used six of his seven strikes to exclude six of the seven blacks on the venire because one was an employee of a company and he found that these employees were not attentive jurors and that a number of the employees were being investigated for a variety of crimes. Another venire member had lived near a home where the residents were arrested. The prosecutor was not sure whether the venire member had any relationship to the persons arrested, and the venire member was similar in age and physical appearance to the accused. The prosecutor struck an unemployed, former student because she appeared to have a dumbfounded or bewildered look on her face, and because she did not know why she was there or what she was supposed to do. A scientist was struck because the prosecutor felt that the scientist's presence would put too great a burden on the prosecution, given the background of the case. Another venire member was struck because his general appearance was unkempt; the prosecutor was not able to question him regarding his job; and the prosecutor felt it was too risky to permit him on the jury. He also appeared gruff and the prosecutor did not want a juror who would be at odds with anyone else on the jury. The final person struck was a single female, who was about the same age as the defendant. The prosecutor was concerned that she might feel as though she were a sister or have some pity for the defendant. She also appeared to be in a bad mood, and her responses were more favorable to the defense than to the prosecutor. *Id.*

In *Chambers v. State*, No. B14–85–947–CR (Tex.App.—Houston [14th Dist.], Dec. 11, 1986) (not yet reported), the court found that the prosecutor had legitimate reasons for striking two black members of the venire. The first person was a Jehovah's Witness, which the prosecutor believed was a fringe religious group. She was struck because her juror card indicated that she was unmarried with two children. The second person was struck because the prosecutor did not feel that the man was attentive. *Id.*

In *Rijo v. State*, 721 S.W.2d 562 (Tex. App.—Amarillo, 1986) (not yet reported), the court found that the prosecutor's strike was exercised in the State's interest of a fair and impartial jury. The juror was struck because he had a cousin who had problems with the law and because he he had a bias against the range of punishment.

The reasons articulated in *Branch, Chambers,* and *Rijo* were similar to reasons articulated by the prosecutor in the present case. We hold that the trial court had a reasonable basis to decide that the reasons stated by the prosecutor for making her strikes were neutral and legitimate. The State rebutted the inference of purposeful discrimination by sufficient evidence showing that appellant's constitutional right to equal protection under the law was not violated.

The appellant's point of error is overruled and the judgment of the trial court is affirmed.