**Sheila HILL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05–88–00082–CR, 05–88–00083–CR.**

Court of Appeals of Texas,
Dallas.

July 20, 1989.

Rehearing Denied Sept. 8, 1989.

Lawrence B. Mitchell, Dallas, for appellant.

Sharon Batjer, Dallas, for appellee.

Before McCLUNG, KINKEADE and OVARD, JJ.

OVARD, Justice.

Appellant, Sheila Ann Hill, appeals a jury conviction for burglary of a vehicle and voluntary manslaughter. The jury assessed punishment at five years' and twenty years' confinement, respectively. In her sole point of error, appellant contends that the trial court erred in overruling her objection to the State's use of peremptory challenges under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Appellant argues that, at trial, the State's use of peremptory challenges to exclude jury members of the appellant's race on racial grounds was improper under *Batson* and was in violation of the equal protection clause of the fourteenth amendment to the Constitution of the United States and article I, section 3a of the Texas Constitution. *Id.* We agree. Accordingly, we reverse and remand this case for a new trial before a jury that is selected in a racially neutral manner.

In determining whether the appellant's rights have been violated, the standard of review to be applied is whether purposeful discrimination has been established. *Keeton v. State*, 749 S.W.2d 861, 867 (Tex. Crim.App.1988) (*Keeton II*). We must consider the evidence in the light most favorable to the trial judge's rulings and determine if those rulings are supported by the record. If the record supports the findings of the trial court, they will not be disturbed on appeal. *Keeton II*, 749 S.W.2d 867.

In order to invoke the protection set forth in *Batson*, a defendant must raise an inference of purposeful discrimination, and the trial court must determine that a prima facie case of discrimination exists through the State's use of its peremptory challenges. A defendant may establish a prima facie case by showing that:

1. he is a member of a cognizable racial group;

2. the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race (peremptory challenges constitute a jury selection practice which permits those to discriminate who are of a mind to discriminate);

3. these facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremen on account of their race.

*Batson,* 476 U.S. at 96, 106 S.Ct. at 1722; *see Keeton v. State,* 724 S.W.2d 58, 65 (Tex.Crim.App.1987) (*Keeton I*); *see also* TEX.CODE CRIM.PROC.ANN. art. 35.-261(a) (Vernon Supp.1989).

The record reflects that the appellant is black. The State exercised six of its ten peremptory challenges to remove six of the eight black veniremembers qualified to serve on the jury. At the conclusion of voir dire, but before the jurors were sworn, appellant presented a motion requesting a *Batson* hearing. The appellant's attorney made an objection to the trial court stating that: "The State intended to strike ... the majority of the blacks off this jury panel and deny the defendant equal protection under the fourteenth amendment of the United States Constitution, equal protection clause of the constitution of the State of Texas and that's a violation of *Batson v. Kentucky.*" In addition, before the judge's ruling, appellant's attorney introduced the venire list into the record as evidence of purposeful discrimination.

The Texas Court of Criminal Appeals, in *Keeton II,* sets out factors that will illustrate the types of evidence that can be used to raise an inference of discrimination. The factors which relate to this case are:

A pattern of strikes against black jurors on the particular venire; e.g., 4 of 6 peremptory challenges were used to strike black jurors.

The type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions.

Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner; e.g., in *Slappy,*[1] a black elementary school teacher was struck as being potentially too liberal because of his job, but a white elementary school teacher was not challenged.

The state used peremptory challenges to dismiss all or most black jurors.

*Keeton II,* 749 S.W.2d at 867.

■■■ The record reflects that appellant raised an inference of purposeful discrimination and that the trial judge determined that a prima facie case of discrimination was established. Trial judges can decide if the circumstances of the prosecutor's use of peremptory challenges create a prima facie case of discrimination against black jurors. *Ali v. State,* 742 S.W.2d 749, 757 (Tex.App.—Dallas 1987, pet. ref'd) *Townsend v. State,* 730 S.W.2d 24, 26 (Tex.App. —Texarkana 1987, no pet.); *see Garza v. State,* 725 S.W.2d 482, 483 (Tex.App.—Corpus Christi) *aff'd,* 739 S.W.2d 374 (Tex. Crim.App.1987).

When a prima facie case of discrimination is determined, the burden shifts to the State to come forward with racially neutral explanations as to why peremptory challenges were exercised against venirepersons of the same cognizable racial group as the appellant. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723; *Keeton I,* 724 S.W.2d at 65; *see* TEX.CODE CRIM.PROC.ANN. art. 35.-261(a) (Vernon Supp.1989). The trial judge conducted a hearing, requiring the prosecutor to state her reasons for exercising peremptory challenges against the six black panel members. *See Batson,* 476 U.S. at 97, 106 S.Ct. at 1723.

■■■ The trial court ultimately overruled appellant's *Batson* objection "in light of the fact that the State left some blacks on the jury panel." The fact that two black jurors served on the jury does not deprive the appellant of the right to challenge the racially discriminating use of peremptory

---

1. *Slappy v. State,* 503 So.2d 350 (Fla.Dist.Ct.App. 1987) as cited in *Keeton II,* 749 S.W.2d at 867.

challenges by the State. *Keeton I,* 724 S.W.2d at 65 n. 5. The prosecutor may not use peremptory challenges to eliminate *any* potential juror on the basis of that juror's race. *Id.; Whitsey v. State,* No. 1121–87, slip op. at 15 (Tex.Crim.App. May 10, 1989) (not yet reported).

*Keeton II* also enumerated factors that weigh heavily against the legitimacy of a racially neutral explanation given by a prosecutor:

> an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically;
>
> no examination or only a perfunctory examination of the challenged juror;
>
> the reason given for the challenge is unrelated to the facts of the case; and
>
> disparate treatment where there is no difference between responses given and unchallenged venirepersons.

*Keeton II,* 749 S.W.2d at 866; *see Whitsey,* slip op. at 9.

■ The record here shows that the State exercised six of its ten peremptory challenges to strike black veniremembers. One of these strikes was panel member Hamilton. The record does not support the State's contention that it acted without regard to race when it struck Hamilton. The State articulated that Hamilton was struck due to her age and because she "appeared to be friendly" with two other black veniremembers. The State did not ask *any* questions or elicit *any* response from panel member Hamilton during voir dire.

On appeal, the State argues that, at trial, it used peremptory challenges to eliminate young venirepersons because the defendant was seventeen years of age. Consequently, the State contends that the younger veniremen may have been more sympathetic to the defendant because of her young age.

Although the age of a juror may be a valid racially neutral reason for using a peremptory challenge, in this case, three jurors younger than Hamilton were not challenged.[2] Striking Hamilton because of her age showed disparate treatment when unchallenged jurors were younger than Hamilton.

■ In addition, the prosecutor struck Hamilton because she "appeared to be friendly" with two other black panel members, McDonald and Hargest.[3] When the prosecutor was asked by the judge why she struck McDonald, the prosecutor replied, "[H]e walked in, I believe with [Hamilton] and [Hargest] who were both black, and all appeared to be very friendly." When asked why she struck Hargest and Hamilton the prosecutor replied, "[Hargest] walked in with ... a young black lady [Hamilton]. They appeared to be very friendly.... They were seated by each other out in the hall, and also, there was only one juror between them in the courtroom, and for that reason, they appeared to be friends...." Hamilton was asked no questions by the prosecutor during voir dire. Hamilton's "appearing to be friendly" with two other black veniremen, without further explanation, is not a racially neutral reason related to the facts of the case.

> The trial judge cannot merely accept the specific reasons given by the prosecutor at face value, the judge must consider whether the facially neutral explanations are contrived to avoid admitting acts of group discrimination. This evaluation by the trial judge is necessary because it is possible that an attorney, although not intentionally discriminating, may try to find reasons other than race to challenge a black juror, when race may be his primary factor in deciding to strike the juror.

*Keeton II,* 749 S.W.2d at 868; *Whitsey,* slip op. at 8.

**2.** Panel member Hamilton was 32 years old, while three of the unchallenged jurors were aged 27, 29, and 30 years.

**3.** We need not consider the peremptory challenges made against McDonald and Hargest. We mention these two veniremen only to show the bias the prosecutor exercised against panel member Hamilton; as already stated, the showing that any member of the venire was struck for a racially motivated reason constitutes reversible error.

The record does not support the trial court's ruling, and we hold that the prosecutor failed to present racially neutral explanations to rebut the appellant's prima facie case of purposeful discrimination against Hamilton. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723; *Keeton I*, 724 S.W.2d at 65. Appellant's rights were violated under the equal protection clause of the fourteenth amendment to the United States Constitution and article I, section 3a of the Texas Constitution.

We reverse and remand this case for a new trial before a jury that is selected in a racially neutral manner.