## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00113-COA

**ELBERT DAVIS A/K/A ELBERT LEE DAVIS**        **APPELLANT**
**A/K/A ELBERT L. DAVIS**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/06/2014 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| |    HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF SEXUAL BATTERY AND SENTENCED TO TWENTY-TWO YEARS AND SIX MONTHS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY $800 TO THE CRIME VICTIMS' COMPENSATION FUND |
| DISPOSITION: | AFFIRMED: 08/04/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND MAXWELL, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1. Elbert Lee Davis appeals his sexual-battery conviction. Davis argues the Washington County Circuit Court erred when it limited his right to show his confession was involuntary, admitted hearsay testimony, and gave an improper jury instruction. We find no error and affirm.

## FACTS

¶2.     In January 2013, a ten-year-old child, Victoria,[1] lived with her grandmother in Greenville, Mississippi.  Family member Elbert Lee Davis, age forty-four, also lived in the home.

¶3.     On January 25, 2013, Victoria was watching television with her two cousins.  Davis entered the room and asked Victoria to come to a back room to iron his clothes.  Victoria went with him.

¶4.     After about ten minutes passed, one of the cousins went to check on Victoria.  The door was locked, and the cousin knocked repeatedly on the door.  When it opened she saw Victoria on the bed pulling up her underwear and saw Davis behind the door pulling up his underwear.

¶5.     Davis then left the home, and Victoria told her cousin what happened.  Victoria recounted, upon entering the room to iron the clothes, she noticed the clothes were brand new and did not need to be ironed.  Davis then asked Victoria to remove her underwear.  She did as told, and he also removed his underwear.  Then, Davis got on top of her on the bed.  He proceeded to insert his penis into her vagina.

¶6.     Victoria told her cousin what happened, and her cousin told her mother about the incident.  The police were then contacted, and investigated the residence that same night.  Victoria was also taken to the emergency room the same evening for evaluation.

---

[1] We use a fictitious name to protect the identity of the minor child.

¶7.     Detective Steven O'Neal, with the City of Greenville Police Department, investigated the sexual-battery allegations against Davis. After Davis was arrested the day after the incident, Detective O'Neal read Davis his *Miranda* rights, which Davis waived. Davis then confessed in a recorded statement to having sex with Victoria. In addition to Davis's confession, Detective O'Neal also obtained Victoria's statement, her cousin's statement, and information from the emergency-room nurse, Kathy Childers.

¶8.     Davis was convicted of sexual battery. He was sentenced to time already served, followed by a term of twenty-two years and six months in the custody of the Mississippi Department of Corrections. It is from this judgment Davis appeals.

**ANALYSIS**

*I.      Whether the trial court limited the right of Davis to show his confession was involuntary.*

¶9.     Davis argues that the trial court limited his right to present evidence to show his confession was involuntary. He adds that this deprived him of his Sixth and Fourteenth Amendment rights to a fair opportunity to present a defense. "The standard of review applied to a circuit judge's admission or exclusion of evidence and testimony is abuse of discretion." *Carpenter v. State*, 132 So. 3d 1053, 1055 (¶5) (Miss. Ct. App. 2013).

¶10.    Before trial, Davis filed a motion to suppress his confession. The trial court held a pretrial hearing where both Detective O'Neal and Davis testified. The trial court then denied the motion and ruled that Davis's confession was admissible.

¶11.    At trial, after opening statements, the State moved in limine to prohibit Davis from

3

introducing testimony of the circumstances under which his confession was obtained: testimony that "relates to any hope or fear or promise or any threats that [Detective] O'Neal may have made . . . ." The State argued it was improper for Davis to present evidence of these considerations because the trial court had already rejected them in ruling that Davis's confession was admissible.

¶12.   Davis argued that the trial court "has ruled and had determined admissibility, but there's still a credibility issue that the jury decides[,]" and he has the "right to take the stand and offer his reason for giving the statement that he made." The trial court ruled that Davis could offer evidence of his "state of mind" by "say[ing] that [he] was afraid and so [he] said what [he] said," but he could not present evidence of "[a]nything about whether [Detective O'Neal] coerced the statement or whether it was by any kind of improper inducements, which I've already ruled it wasn't." Davis claims that the trial court's ruling was that Davis could testify that he confessed because he was afraid, but he was prohibited from presenting evidence of the circumstances to show why he was afraid. Thus, Davis claims this ruling violated his fundamental right(s) to present a defense under the Sixth and Fourteenth Amendments.

¶13.   The trial court denied the motion and held:

> I don't think I can grant the motion in limine as far as, you know, what his state of mind was when he made the statement or something of that nature. I just don't think I can, so I'll overrule it as to that.
>
> As to specific things about whether the guy threatened him or not, I think I would agree with you about that. I guess what I'm going to say is I don't think

4

you can ask the officer anything about whether he coerced the statement or whether it was by any kind of improper inducements, which I've already ruled it wasn't. As far as the guy's state of mind, I don't think the officer can testify to that. So I don't think I can give that as a motion in limine. I think I'll just have to wait and hear the question.

¶14. After this, Davis's counsel did not raise the issue again during the trial. In addition to not restricting the evidence, the trial court instructed the jury to determine if Davis made the confession voluntarily:

> The Court instructs the jury that evidence has been received concerning a statement said to have been made by the defendant.

> It is for you to determine whether the defendant did, in fact, make the statement. If you find that the defendant did make the statement, then you must determine what weight, if any, should be given the statement; you should consider all matters in evidence having to do with the statement, as made, and if you find from the *evidence* that it was made under influence of hope or fear, you may take this into account in determining what weight or credit, if any, you decide to attach to it as evidence.

¶15. Although Davis claims that the trial court's ruling precluded him from "presenting evidence of the circumstances to show why he was afraid" when he gave his confession, the trial court did not prohibit the introduction of such evidence. Instead, the trial judge said, "I don't think you can ask the officer anything about whether he coerced the statement or whether it was by any kind of improper inducements . . . ." The trial judge did not indicate that Davis could not testify about any alleged coercion. As a result, we find that the trial court did not prevent Davis from presenting evidence to show that he was allegedly afraid due to alleged threats from Detective O'Neal. The trial judge merely reserved ruling on the motion and said that he would "just have to wait and hear the question."

5

¶16. Davis's counsel did not raise the issue again during the testimony of either Detective O'Neal or Davis. "This Court has repeatedly held that it is the responsibility of the movant to obtain a ruling from the court on motions and [the] failure to do so constitutes a waiver." *Byrom v. State*, 863 So. 2d 836, 851 (¶27) (Miss. 2003) (internal quotations omitted). Davis's counsel's failure to raise the issue again at the appropriate time and obtain a ruling constitutes a waiver of the issue on appeal.

        II.        *Whether the trial court allowed impermissible hearsay.*

¶17. Next, Davis argues that the trial court erred in allowing the State to admit hearsay testimony. Hearsay is an out-of-court statement offered in court by someone other than the declarant to prove the truth of the matter asserted. M.R.E. 801(c). We review the trial court's admission or exclusion of evidence and testimony under an abuse-of-discretion standard of review. *Carpenter*, 132 So. 3d at 1055 (¶5).

¶18. During the State's direct examination of Detective O'Neal, he was asked and allowed to testify that nurse Kathy Childers told him at the hospital "that there was penetration inside [Victoria]'s vagina." Davis argues that this testimony was inadmissible hearsay, the probative value of which was substantially outweighed by its prejudicial effect. Thus, Davis claims this testimony was inadmissible under Mississippi Rules of Evidence 801, 802, and 403.

¶19. Indeed, the testimony by Detective O'Neal as to what Childers said appears to be hearsay. However, the State responded to the objection and claimed that Childers's

6

statement was not being offered for the truth of the matter asserted, but to show why Detective O'Neal charged Davis. The trial court agreed and overruled the objection.

¶20. This Court has held that "[s]tatements are not hearsay when they are admitted to explain an officer's course of investigation." *Lawrence v. State*, 116 So. 3d 156, 161 (¶19) (Miss. Ct. App. 2012). Here, we agree with the trial judge and find the testimony was admitted to explain Detective O'Neal's course of investigation. Accordingly, the trial court did not abuse its discretion in allowing the testimony.

¶21. Davis also argues that the probative value of this testimony was substantially outweighed by its prejudicial effect, and it was therefore inadmissible under Mississippi Rule of Evidence 403. The State responds that Davis's only objection at trial was that the testimony should be excluded as hearsay. Davis did not argue that the testimony was more prejudicial than probative. An "[o]bjection on one ground at trial waives all other grounds for objection on appeal." *Rubenstein v. State*, 941 So. 2d 735, 758 (¶75) (Miss. 2006). Therefore, we do not find error in this issue.

 *III. Whether the trial court gave an improper instruction*.

¶22. Finally, Davis argues that the trial court erred in giving jury instruction S-8. It instructed the jury "that the unsupported testimony of a sex[-]crime victim is sufficient to sustain a conviction if that testimony is not discredited or contradicted by other credible evidence." The State argues Davis is precluded from raising this issue because he failed to raise it at trial.

7

¶23. The Mississippi Supreme Court has held that an opposing party must state a contemporaneous objection in specific terms to a jury instruction in order to preserve that point for appeal. *Young v. Robinson*, 538 So. 2d 781, 783 (Miss. 1989). Here, Davis did not state a contemporaneous objection to preserve his objection for appeal. Therefore, this issue is barred from consideration on appeal unless the circuit court committed plain error. *Williams v. State*, 61 So. 3d 981, 983 (¶11) (Miss Ct. App. 2011).

¶24. Here, Davis argues that the instruction improperly commented on the sufficiency of the evidence and the witness's testimony. However, "[o]nly an error so fundamental that it creates a miscarriage of justice rises to the level of plain error." *Willis v. State*, 999 So. 2d 411, 414 (¶9) (Miss. Ct. App. 2008) "Plain error occurs where the substantive rights of a defendant are violated." *Id.*

¶25. When considering whether jury instructions created a manifest injustice, "instructions are to be read together and taken as a whole with no one instruction taken out of context." *Johnson v. State*, 19 So. 3d 145, 147 (¶10) (Miss. Ct. App. 2009) (quoting *Poole v. State*, 826 So. 2d 1222, 1230 (¶27) (Miss. 2002)). In considering other relevant jury instructions, D-4 states:

> Each person testifying under oath is a witness. You have the duty to determine the believability of the witnesses. In performing this duty, you must consider each witness'[s] intelligence, the witness'[s] ability to observe and accurately remember, the witness'[s] sincerity, and the witness'[s] demeanor while testifying. You must consider also the extent the witness is either supported or contradicted by other evidence; the relationship the witness may have with either side; and how the witness might be affected by the verdict.

8

In weighing a discrepancy by a witness or between witnesses, you should consider whether it resulted from an innocent mistake or a deliberate falsehood, and whether it pertains to a matter of importance or an unimportant detail.

You may reject or accept all or any part of a witness'[s] testimony[,] and you may reject part and accept other parts of a witness'[s] testimony. After making your own judgment, you will give the testimony of each witness the credibility, if any, as you may think it deserves.

¶26. Viewing the jury instructions as a whole, "this Court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, and whether the error has prejudiced the outcome of the trial." *Cox v. State*, 793 So. 2d 591, 597 (¶22) (Miss. 2001). Considering all of the jury instructions, there is no plain, clear, or obvious error that prejudiced the outcome of Davis's trial.

¶27. Further, "[i]f the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Taylor v. State*, 763 So. 2d 913, 915 (¶8) (Miss. Ct. App. 2000). Both sides agree that the disputed jury instruction fairly states the law of the case. This Court has stated:

[O]ur appellate courts have held that the unsupported testimony of a sex-crime victim is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with the conduct of one who has been victimized by a sex crime.

*Faulkner v. State*, 109 So. 3d 142, 149 (¶31) (Miss. Ct. App. 2013) (internal citations omitted). Therefore, we find the trial court did not abuse its discretion in giving jury instruction S-8.

9

¶28.   In conclusion, we find no reversible error.  Therefore, we affirm the judgment of conviction.

¶29.   **THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY-TWO YEARS AND SIX MONTHS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY $800 TO THE CRIME VICTIMS' COMPENSATION FUND IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.**

**LEE, C.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.  IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  WILSON, J., NOT PARTICIPATING.**