# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00739-COA

**PAULA BROCK**                                                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/05/2021 |
| TRIAL JUDGE: | HON. STANLEY ALEX SOREY |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | CHRISTOPHER DOUGLAS HENNIS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/20/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     A Smith County Circuit Court jury convicted Paula Brock of possession of more than two grams but less than ten grams of methamphetamine. The Smith County Circuit Court sentenced Brock to serve eight years in the custody of the Mississippi Department of Corrections (MDOC) and to pay a $2,000 fine. On appeal, Brock argues that her trial attorney provided ineffective assistance of counsel. Finding no error, we affirm Brock's conviction and sentence.

## FACTS

¶2.     On November 3, 2019, Deputy Marquize Nixon with the Smith County Sheriff's Department initiated a traffic stop after observing a vehicle cross into the opposite lane of traffic and fail to stop at a stop sign.  Brock was the only person inside the vehicle, and Deputy Nixon discovered during the traffic stop that Brock was driving with a suspended driver's license.  After asking Brock to exit her vehicle, Deputy Nixon noticed a strong odor of marijuana.  When Deputy Nixon asked whether Brock had any marijuana in her vehicle, Brock answered affirmatively and retrieved from her purse a green leafy ball that looked and smelled like marijuana.  Brock denied having any other illegal substances in her possession.

¶3.     Deputy Jason Runnels, also with the Smith County Sheriff's Department, arrived at the scene to assist Deputy Nixon.  When Deputy Runnels searched Brock's purse, he discovered a plastic bag containing a crystal-like substance that appeared to be methamphetamine.  After Brock admitted that the crystal-like substance belonged to her, Deputy Nixon secured the evidence.  He arrested Brock for possession of methamphetamine and marijuana and issued Brock citations for her three traffic violations.  Subsequent tests performed on the crystal-like substance found inside Brock's purse confirmed that the substance was 6.43 grams of methamphetamine.

¶4.     Following the trial testimony and evidence, the jury found Brock guilty of possessing more than two grams but less than ten grams of methamphetamine.  The circuit court sentenced Brock to serve eight years in MDOC's custody and to pay a fine of $2,000.  Brock filed an unsuccessful motion for judgment notwithstanding the verdict or, alternatively, a

2

new trial. Aggrieved, Brock appeals.

## DISCUSSION

¶5.     In her sole issue on appeal, Brock contends that her trial attorney provided ineffective assistance of counsel. Generally, ineffective-assistance-of-counsel claims are more appropriately raised in a motion for post-conviction relief. *Ford v. State*, 333 So. 3d 896, 912 (¶41) (Miss. Ct. App. 2022). We address ineffective-assistance claims on direct appeal, however, "when '[1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the finding of facts by a trial judge able to consider the demeanor of the witnesses, etc., are not needed.'" *Id.* (quoting *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020)). We also review ineffective-assistance claims on direct appeal if "the record affirmatively shows the claims [lack] merit." *Id.* at 912-13 (¶41).

¶6.     Here, Brock asserts that specific statements her trial attorney made during voir dire and closing argument, as well as jury instruction D-12, misinformed the jury as to the State's burden of proof, improperly shifted the burden of proof to the defense, and misinformed the jury that acquittal was only appropriate if Brock actually proved her innocence. Upon review, we find the record before us is sufficient to address on direct appeal Brock's claim of ineffective assistance because the record shows the claim lacks merit.

¶7.     We review Brock's "claim of constitutionally ineffective assistance of counsel . . . de novo." *Ford*, 333 So. 3d at 913 (¶42). To prove ineffective assistance, Brock "must show

3

that (1) [her] counsel's performance was deficient, and (2) the deficient performance prejudiced [her] defense." *Id.* Under the first prong, Brock must demonstrate her "counsel made errors so serious that he or she was not functioning as the counsel guaranteed [to Brock] by the Sixth Amendment." *Cork v. State*, 329 So. 3d 1183, 1192 (¶32) (Miss. 2021) (quoting *Chamberlin v. State*, 55 So. 3d 1046, 1050 (¶4) (Miss. 2010)). The second prong requires Brock to establish that her "counsel's errors were so serious as to deprive [Brock] of a fair trial, a trial whose result is reliable." *Id.* (quoting *Chamberlin*, 55 So. 3d at 1050 (¶4)). We "look at the 'totality of the circumstances to determine whether counsel's efforts were both deficient and prejudicial. There is a strong but rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Ford*, 333 So. 3d at 913 (¶42) (quoting *Henderson v. State*, 281 So. 3d 1058, 1063 (¶16) (Miss. Ct. App. 2019)). "[E]ven where professional error is proven, [the appellate c]ourt must determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Cork*, 329 So. 3d at 1192 (¶33) (quoting *Chamberlin*, 55 So. 3d at 1050 (¶5)).

¶8.    Brock first takes issue with statements her attorney made during voir dire. Specifically, Brock's attorney stated:

> And so, there's quite a number of you that had jury experience[,] and the biggest thing to take away from this is the burden of proof. In a civil case, it's a preponderance[-]of[-]the[-]evidence standard, which is like 50.1 percent of the evidence tilts the scale in favor of one party.
>
> Here, the State, as I stated, has to prove [its] case beyond a reasonable

4

doubt, *which is beyond reasonable probability and belief.*

. . . .

> I know you have taken several oaths today, and under your oaths as a juror, it's your duty, it's as much your duty to convict the guilty and . . . *acquit the innocent.* And if the State doesn't meet [its] burden on every element of the charge that [it is] bringing today, it's your duty to acquit Ms. Brock.

(Emphasis added). On appeal, Brock claims that the first italicized comment by her attorney lessened the State's burden of proof. In addition, Brock asserts that the second italicized comment by her attorney improperly shifted the burden of proof from the State to the defense and required Brock to prove her actual innocence.

¶9. During closing arguments, Brock's attorney made another reference to the jury's duty to "acquit the innocent." According to Brock, this comment further served to confuse jurors and to misinform them as to the law and their duty. In the context of his overall closing argument, Brock's attorney stated:

> And I know you have heard this over and over, but I would like you to pay attention to Jury Instruction D-2. It states the Court instructs the jury that you are bound in deliberating upon this case to give Paula Brock the benefit of any reasonable doubt. That's any reasonable doubt of her guilt that arises out of the evidence or the want of evidence in this case.

> And that goes back to my argument about the State had to prove the entire amount was a controlled substance, and [the State] failed to do that. There's always reasonable doubt of the defendant's guilt when the evidence simply makes it probable that the defendant is guilty.

> Mere probability of guilt will never warrant you to convict the defendant. It is only when after examining the evidence on the whole you are able to say on your oaths beyond a reasonable doubt that the defendant is guilty that the law will permit you to find him or her guilty. You might be able to say

5

that you believe him or her to be guilty, and yet, if you are not able to say on your oaths beyond a reasonable doubt that he/she is guilty, it is your sworn duty to find the defendant not guilty. And I believe this is the most important jury instruction.

. . . .

[A]lso, the Court instructs you that it is as much your sworn duty as jurors to acquit the innocent as it is to convict the guilty.

(Emphasis added).

¶10. Finally, Brock contends that jury instruction D-12, which her attorney proposed and the circuit court gave, contained the same misstatement of the law that only served to confuse the jury. As given, jury instruction D-12 stated, "The Court instructs the jury that it is as much your sworn duty as jurors to acquit the innocent as it is to convict the guilty; and under the law of the State of Mississippi, all persons are presumed to be innocent until proven guilty beyond a reasonable doubt."

¶11. Relevant to Brock's arguments, this Court previously has addressed a jury instruction with language similar to that now complained of by Brock on appeal. As we discussed in *Johnson v. State*, 19 So. 3d 145, 146 (¶7) (Miss. Ct. App. 2009), "[t]he complained[-]of jury instruction stated: 'The Court instructs you that it is just as much your duty under the law and upon your oaths as jurors to free an innocent person by your verdict of not guilty as it is for you to convict a guilty person.'" Much like Brock's assertions here regarding jury instruction D-12 and her attorney's comments during voir dire and closing arguments, Johnson claimed in his case that the jury instruction at issue "impermissively shifted the burden of proof" to

6

the defense, "thereby requiring him to prove his innocence[,]" and it "confused the jurors." *Id.* On appeal, this Court found that the jury instruction did not impermissibly shift the burden of proof from the State to the defendant and that the inclusion of the jury instruction failed to create any injustice for Johnson. *Id.* at 147 (¶¶10-11).

¶12.     After reviewing the totality of the circumstances in the present case, we find Brock has failed to establish that her "counsel's efforts were both deficient and prejudicial," as required to prove a claim of ineffective assistance. *Ford*, 333 So. 3d at 913 (¶42) (quoting *Henderson*, 281 So. 3d at 1063 (¶16)).  As in *Johnson*, we conclude that neither the isolated statements Brock's attorney made nor the inclusion of D-12 among the jury instructions "impermissibly shift[ed] the burden of proof from the State to the defendant" or "create[d] any injustice" for Brock. *Johnson*, 19 So. 3d at 147 (¶¶10-11).  Despite Brock's complaints about her trial attorney's performance, the record reflects that her attorney repeatedly emphasized throughout the trial that the State held the burden of proof and had to satisfy its evidentiary burden beyond a reasonable doubt.  Even though no error occurred here, we take this opportunity to again remind trial attorneys of Mississippi's well-established precedent that "reasonable doubt defines itself[,]" and therefore, any attempts to define reasonable doubt are improper. *McCammon v. State*, 299 So. 3d 873, 897 (¶97) (Miss. Ct. App. 2020) (quoting *Fulgham v. State*, 46 So. 3d 315, 332 (¶46) (Miss. 2010)).  As stated, however, no such error occurred during Brock's trial, and the record shows that the circuit court properly instructed the jury that (1) the law presumed Brock was innocent, and she did not have to

7

prove her innocence; (2) the State had the burden to prove Brock was guilty of every element of the crime beyond a reasonable doubt; (3) the attorneys' statements were not evidence; (4) the jury should base its verdict on the actual evidence; and (5) the jury should consider the jury instructions as a whole and not single out any one instruction. *See Pope v. State*, 330 So. 3d 409, 422 (¶55) (Miss. Ct. App. 2021) (recognizing that appellate courts review all jury instructions together and will find no reversible error where the instructions as a whole accurately announce the law).

¶13.    In light of the State's substantial evidence against Brock at trial and the circuit court's proper instructions to the jury, we conclude that even if Brock had proved her attorney erred, she has not shown any "reasonable probability that, but for [her] counsel's unprofessional errors, the result of the proceedings would have been different." *Cork*, 329 So. 3d at 1192 (¶33) (quoting *Chamberlin*, 55 So. 3d at 1050 (¶5)). We therefore find that this assignment of error lacks merit.

## CONCLUSION

¶14.    Because we find no merit to Brock's claim of ineffective assistance of counsel, we affirm her conviction and sentence.

¶15.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**